IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| DIGIMEDIA TECH, LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>COMCAST CABLE COMMUNICATIONS, LLC, d/b/a XFINITY, COMCAST CORP., and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,<br><br>      Defendant. | CIVIL ACTION<br><br>NO. 6:21-cv-01341<br><br>**Jury Trial Demanded** |

# COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff DigiMedia Tech, LLC ("Plaintiff") files this Complaint for Patent Infringement against Defendants Comcast Cable Communications, LLC d/b/a Xfinity, Comcast Corp., and Comcast Cable Communications Management, LLC (collectively "Comcast" or "Defendants"), and states as follows:

## THE PARTIES

1. Plaintiff is a limited liability company organized and existing under the laws of the State of Georgia, having its principal office at 44 Milton Avenue, Suite 254, Alpharetta, GA 30009.

2. On information and belief, Defendant Comcast Cable Communications, LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103. Comcast Cable Communications, LLC may be served through its registered agent Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, Delaware 19801.

3. On information and belief, Defendant Comcast Corp. is a corporation organized and existing under the laws of the State of Pennsylvania, having its principal place of business at 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103. Comcast Corp. may be served through its registered agent CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, TX 75201. On information and belief, Comcast Corporation is registered to do business in the State of Texas and has been since at least November 30, 2018

4. On information and belief, Defendant Comcast Cable Communications Management, LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103. Comcast Cable Communications Management, LLC may be served through its registered agent CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, TX 75201. On information and belief, Comcast Cable Communications Management, LLC is registered to do business in the State of Texas and has been since at least November 10, 2011.

## JURISDICTION AND VENUE

5. This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

6. Defendants are subject to personal jurisdiction in this Court because, *inter alia*, on information and belief, (i) Comcast maintains a regular and established place of business in Texas in this Judicial District at Comcast Innovation Center at 6200 Bridge Point Parkway, Austin, Texas 78730; (ii) Defendants sell products and services to customers in this Judicial District;

and (iii) the patent infringement claims arise directly from Defendants' continuous and systematic activity in this Judicial District.

7. Venue is proper as to Comcast in this Judicial District under 28 U.S.C. § 1400(b) because, *inter alia*, on information and belief, Defendants have a regular and established place of business in this Judicial District at 6200 Bridge Point Parkway, Austin, Texas 78730, and has committed acts of patent infringement in this Judicial District and/or has contributed to or induced acts of patent infringement by others in this District.

## FACTUAL BACKGROUND

*The '818 Patent*

8. Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,744,818 entitled "Method and Apparatus for Visual Perception Encoding" ("the '818 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

9. A true and correct copy of the '818 patent is attached hereto as Exhibit A. The '818 patent is incorporated herein by reference.

10. The application that became the '818 patent was filed on December 27, 2000.

11. The '818 patent issued on June 1, 2004, after a full and fair examination by the USPTO.

12. The '818 patent is valid and enforceable and directed to eligible subject matter.

13. The elements recited in the asserted claims of the '818 patent were not well-understood, routine, or conventional when the application that became the '818 patent was filed.

14. The claims of the '818 patent are directed to technical solutions to the technical problem of reducing perceptual redundancy independent of other video compression techniques. One of the reasons this is important is for storing video in a compressed format, where the

compression should also support subsequent viewing of the video at high quality. Since video streaming services must balance the competing features of both high-quality video and limited or practical video file sizes, the problem calls for technical solutions. The '818 patent discloses and claims such technical solutions. For example, the '818 patent recognized that video encoding can compress the source video input with a visual perception estimator and a perception threshold. The '818 patent discloses a number of techniques which include (i) a compression dependent threshold estimator using the perception threshold and (ii) a filter for pixels using the compression dependent threshold. Consequently, the technology in the '818 patent enables smaller video file sizes for a specified level of video quality.

    15.    Specifically, claims 1, 2, and 5 of the '818 patent claim:

> 1. A video encoding system comprising:
>
> a visual perception estimator adapted to estimate a perception threshold for a pixel of a current frame of a videostream;
>
> an encoder adapted to encode said current frame;
>
> a compression dependent threshold estimator adapted to estimate a compression dependent threshold for said pixel at least from said perception threshold and information from said encoder; and
>
> a filter unit adapted to filter said pixel at least according to said compression dependent threshold.
>
>
> 2. A system according to claim 1 and wherein said compression dependent threshold estimator also estimates at least one parameter from the following group of parameters:
>
> whether or not a new frame NwFr has been defined by said encoder as an I frame;
>
> whether an ith pixel is in the foreground FG or the background BG of a picture;
>
> whether an ith pixel forms part of an edge Ed around an object in

> the picture;
>
> whether or not the ith pixel forms part of a single detail SD;
>
> whether or not the ith pixel is part of a group Gr of generally periodic details;
>
> the contrast level Lv of the detail for the ith pixel;
>
> the duration τ of a detail within a picture;
>
> how full said encoder is; and the distance DP of the ith pixel from the center of the frame.
>
> 5. A system according to claim 1 and wherein said filter unit is a non-linear filter.

16. The sequence of steps set forth in the claims of the '818 patent provide a technical solution to the technical problem of reducing perceptual redundancy independent of other video compression techniques .

17. The claimed sequence of steps set forth in the claims constitutes patent-eligible subject matter, is not directed to an abstract idea, law of nature, or natural phenomenon, and contains one or more inventive concepts for balancing the competing features of both high-quality video and limited or practical video file sizes.

18. This claimed sequence was not well-understood, routine, or conventional at the time of the invention.

*The '568 Patent*

19. Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,807,568 entitled "Recipient Selection Of Information To Be Subsequently Delivered" ("the '568 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

20. A true and correct copy of the '568 patent is attached hereto as Exhibit B. The '568 patent is incorporated herein by reference.

21. The application that became the '568 patent was filed on July 27, 2000.

22. The '568 patent issued on October 19, 2004, after a full and fair examination by the USPTO.

23. The '568 patent is valid and enforceable and directed to eligible subject matter.

24. The elements recited in the asserted claims of the '568 patent were not well-understood, routine, or conventional when the application that became the '568 patent was filed.

25. The claims for the '568 patent are directed to technical solutions to the technical problem of locating and accessing information content desired by requesting users, where the information content is controlled and held by information providers. One of the reasons this is important is that a network providing service to subscribers may not know either (i) if the user has rights to access the information content held by information providers and accessed via the network or (ii) if the information provider holds the requested information content. Since a network prefers easy access to information content desired by users, but doesn't know upon receiving a request by users if the information content is available to the users, the problem calls for technical solutions. The '568 patent discloses and claims such technical solutions. For example, the '568 patent recognized that user requests for information could be collected by a network and then forwarded to information providers, where the information providers can determine if they have control over the information. Upon successfully confirming the conditions for user access, the network can deliver information that is under control of the information provider to the requesting user.

26. Specifically, asserted claim 1 of the '568 patent claims:

> 1. A method of delivering information to a requesting user, said method comprising the steps of:
>
> making a request available to information providers by a user that said user desires certain information content;
>
> accessing said request by any information provider other than said user and wherein said accessing is under control of said accessing information provider independent from said user;
>
> determining by said information provider whether said information provider has control of information content that said user desires; and
>
> under at least partial control of said determining step delivering said information content which is under the control of said information provider and which information content is desired by said user.

27. The sequence of steps set forth in the asserted claim of the '568 patent provides a technical solution to the technical problem of locating and accessing information content desired by requesting users, where the information content is controlled and held by information providers.

28. The claimed sequence of steps set forth in the asserted claim constitutes patent-eligible subject matter, is not directed to an abstract idea, law of nature, or natural phenomenon, and contains one or more inventive concepts for accomplishing the goal of locating and accessing information content desired by requesting users, where the information content is controlled and held by information providers.

29. This claimed sequence was not well-understood, routine, or conventional at the time of the invention.

*The '980 Patent*

30. Plaintiff is the owner by assignment of all right, title, and interest in and to United States Patent No. 8,160,980 entitled "Information System Based On Time, Space And

7

Relevance" ("the '980 patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

31. A true and correct copy of the '980 patent is attached hereto as Exhibit C. The '980 patent is incorporated herein by reference.

32. The application that became the '980 patent was filed on July 11, 2008.

33. The '980 patent issued on April 17, 2012, after a full and fair examination by the USPTO.

34. The '980 patent is valid and enforceable and directed to eligible subject matter.

35. The elements recited in the asserted claims of the '980 patent were not well-understood, routine, or conventional when the application that became the '980 patent was filed.

36. The claims for the '980 patent are directed to technical solutions to the technical problems of both (i) reducing the wait time between requesting common, everyday information and displaying such information to a user and (ii) intelligently generating suggested content for the user from the potentially extensive information based on a user profile. The claimed invention consists of a new concept, function, and format of delivery that provides a level of ease in accessing common information that prior art systems could not provide, including by providing a proxy that handles the collection and parsing of data, a server that gathers usage data from the client, a data mining cluster that allows for user profiling and time, space and relevance analysis, and a set of channels which are periodically updated and upon which automatic suggestions are given based on the user profile.

37. Specifically, claims 1 and 4 of the '980 claim:

> 1. An information system based on time, space and relevance, said system comprising: a client that displays information in a user-friendly manner; a proxy that handles the collection and parsing of data; a server that gathers usage data from the client; a data mining cluster

> that allows for user profiling and time, space and relevance analysis; a set of information channels, which are periodically updated, and upon which automatic suggestions are given based on a user profile.
>
> 4. The system according to claim 1, wherein the data handled by the proxy is in extensible markup language (XML) format.

38. The system of asserted claim 1 provides a technical solution to the technical problem of quickly and efficiently providing common information to users. For example, in one embodiment the "system relies on a local client and a proxy, which can be fully located on the client itself, or rather on a separate server. Basic data such as weather forecasts, temperature, news etc. can be displayed to the user. By the user's choice of display, a profile can be constructed which suggests to the user alternative channels that match the user's profile but not the user's current selection" ('980 patent 1:60-67).

39. The specification of the '980 patent goes on to explain:

> The system is a quality of life solution developed in view of residential housing complexes, for supplying information based on time, space and relevance therein. The system is made up of several interdependent subsystems, the client and the supporting infrastructure. The client includes a user-friendly interface and a proxy. The user interface is based in a touch screen placed inside the home to provide quick and easy access to a range of services including the information listed in the former paragraph, and also other functions such as digital photo frame. The proxy pre-fetches information for rapid access. The information provided to the user is based on the user's location and profile. Information is based in channels catalogued in a directory with levels of information and related-location. The usage of the system determines the suggestion of new services to the user.
>
> The supporting infrastructure involves a database collecting information related to the users' usage of the system, a web portal for system administration, and a statistics analyzer to study the information and perform channel suggestions for each user. Additionally, the server can also pre-fetch client information, allowing thin clients with reduced processing power to be used within the proposed system. The database allows analysis of users' usage and to perform profiles leading to suggesting information channels that best fit their profiles.

A portal for system administration is also included allowing the addition, modification or removal of services to/from the system, along with system related parameters, emergency contacts, and location-based events relevant to the user.

The proxy module requests extensible markup language (XML)-based services and converts the provided information to the system format. This allows for seamless integration of different content providers for different information channels. The proxy also registers users' preferences, performs updates of the application and sends statistics to the database. In case of thin clients, the content can be pre-fetched into a server module, named a Content Server, and afterwards requested by the thin client.

The content within the proxy is time, location and user tagged. Information in the information channel is time tagged; the last information retrieved is the most relevant for the moment. When applied, the proxy is also able to fetch information within an information channel related to the client location. Configuration files are used to select the correct parameters to select relevant information within the XML-based service.

Besides XML-based information, the system is also able to fetch and navigate within maps to visualize location based content. The location-based content appears through the usage of a collection of layers that the user can select based in his or her interests.

The system also incorporates automatic updates to seamlessly integrate new functionalities during the course of the system life cycle. Periodically, the proxy checks the web administration portal for updates and system-related information according to the functionalities integrated within the system.

Statistics are collected within the user interface and sent to the proxy. By this tiered process, the system guarantees that statistical information is not lost due to network failure.

The proxy also integrates contacts, to-do lists and calendar functionalities.

For different processing loads, the proxy may reside entirely on the client, or run partially on a server.

The client has a hierarchical way to access information through different depths of information also reflected in Catalogue Directory stored within the Web Administration Portal. In the first information level, the user can find, for example access to information, services, SOS and Maintenance functionalities. SOS allows for fast access to emergency contacts, and

maintenance allows for system customization, namely related location, approval of system services suggestions, themes customization, user identification and screensaver parameters.

Location based information is customized through introduction of the user's location-based reference, namely a landline phone number, a zip code or selection of district, municipality and parish. Moreover, when the screensaver is customized, the system automatically updates media content that will be shown, through the usage of personalized media content service. Upon user's approval of new information channels to be added to the client, the interface is automatically updated to incorporate the suggestions.

For statistical usage, each interaction between the user and the interface is reported to the proxy as an event.

The architecture of the user also uses XML to seamlessly configure the interface and supply relevant information within the interface. This allows for a fast modification of the interface when messages within the platform need to be accommodated.

The Database stores statistics (active/inactive clients, services unavailability, errors, etc).

The database stores users' registrations.

The Web Administration Portal enables addition, modification and removal of new services to be fetched by the proxy and incorporated within the user's interface.

By default, a set of services is integrated within the interface. Afterwards, based in the user's usage of the system further suggestions are performed by the system to the client and submitted for his or her approval.

Emergency contacts and relevant events are also inserted within the Web Administration Portal in order to be fetched by the proxy and shown within the user interface.

Administration statistics are also visualized within the web administration portal.

In the Web Administration Portal, along with the addition, modification and removal of services, the administrator is also able to catalogue each service in a directory, named Catalogue Directory, with levels of information, information related time, user's reference and location-related information. The Catalogue Directory is used within the Statistics

Analyzer to suggest the information channels that best fit the user's profile.

Events performed by the user and stored within the database are analyzed. After analysis, new service suggestions for each user are made and stored within the database for future proxy retrieval.

The process by which the user profile is built and suggestions are made is hereinafter described:

The organization of information in each information channel ("channel") shall be executed based on Interaction Time in each information level. Most used items shall be displayed in greater focus, causing the remaining items to be in lesser focus.

E.g., if Economy News are the most accessed in the News Channel then such item will appear in greater focus than the Neighborhood News, as well as the remainder.

The update of the channel disposition shall be done by a content server when the application is updated.

In the Intelligent Suggestions Channel there are suggestions of content according to the user's profile. The user's profile is defined based on every click of the user in the channels.

The Intelligent Suggestions Channel is defined by the following process:

1—Previous Information Cataloguing

All information related to the user, channels and associated hyperlinks is categorized in a hierarchical way.

The user have access to several categories or associated category hierarchy. Geography is a good example. E.g. a user in "Lisbon", shall implicitly be under "Portugal", which on its hand is under "Europe".

The categorization of the channels and associated hyperlinks can be exemplified again by the News Channel. The user can click on "News" and then click on one of the sub-level, which for example can include "Economics" and "International".

Categorization shall also employ time variables, such as the day of the week on which the click occurred (1-7), if it is a working day, weekend or holiday. It will also employ the date on which the click took place,

decomposing the date in the categories "year", "month", "day", "hour" and "minute".

2—User Profile Definition

The user profile is obtained resorting to Data Mining Clustering Techniques applied to the interaction records and their categories. Clustering is the partitioning of a data set into subsets (clusters), so that the data in each subset is similar within a parameterized distance. Each cluster that is obtained shall stand for a user profile.

As an example, consider a list of records from 3 users whose identifiers (ID) are 174, 175 and 176. The first record in FIG. 4 is from user 175 and was recorded at Jan. 1, 2007 at 10:12 in the path "News"→"Economics"→"Microeconomics". This hierarchy is represented by the columns "Pag. Level 1"=1="News", "Pag. Level 2"=2="Economics", and "Pag. Level 3"=1="Microeconomics".

The geographic location of the user is represented in a hierarchical way by "User Space 1"="Africa", "User Space 2"="Angola", "User Space 3"="Luanda". When possible, the information in the channel the user accessed is also geographically categorized; in this example it is done by "Content Space 1"="Africa", "Content Space 2"="Angola", "Content Space 3"="Luanda".

3—Intelligent Suggestions Channel

After defining the Cluster (profile) to which the user belongs, the channels to be suggested to the user are determined by analysis of all the "Pag. Level" categories and Interaction Time.

For each channel path in the cluster a sequence of probabilities is defined in regard to the user being likely to go full depth on a path or not. This allows for a prediction of the probability of the user following a determined hyperlink.

The set of paths for final hyperlinks in a cluster can be represented via a hypergraph. Each cluster record being a hyperedge of the hypergraph. A hypergraph H=(V,E) is a set of vertexes V and a set of hyperedges E, representing a graph extension in which each edge can connect to more than two vertexes.

For example, if {p1="News", p2="Economics", p3 "Microeconomics"} is a record in the cluster, then the hypergraph will include the hyperedge which connects p1 to p2 and p3. Next, a determined weight will be linked

to each hyperedge, calculated from the Page Levels probability, and weighted with Interaction Time.

Finally, to determine the suggestion to be submitted to the user, first the cluster to which the user belongs is identified and then the hyperlink (hyperedge) with the greatest relevance (weight) is suggested. If this hyperlink was already one of the most visited by the user, then the next most relevant hyperlink is selected until it is not one of the most relevant to the user.

Suppose that the bold records in FIG. 4 form a cluster. In order to determine the weights, we first calculate the probability of each hyperedge in the cluster and then multiply it by the average of its interaction times, as presented in FIG. 5.

The hyperedge with higher weight is the suggestion to the user.

In this example, the hyperlink suggested to the user is 2-3-1.

The specific element that determines geo-referenced information may vary from provider to provider. For instance, a good implementation can be achieved through zone codes in some areas. The method by which location is provided can vary.

The exemplary embodiments of the present invention, including the processes described above, can be written as computer programs and can be implemented in general-use digital computers that execute the programs using a computer readable recording medium and other types of transmission media. Examples of the computer readable recording medium include magnetic storage media (e.g., ROM, floppy disks, hard disks, etc.), and optical recording media (e.g., CD-ROMs, or DVDs). Other types of transmission media can include carrier waves (e.g., transmission through the Internet).

The foregoing embodiments are merely exemplary and are not to be construed as limiting the present invention. The present teaching can be readily applied to other types of apparatuses.

'980 patent, 2:30-5:59.

40. Figure 4 of the '980 patent, described in the passage above, shows:

| Year | Month | Day | Hour | Minutes | UserId | Pag. Level 1 | Pag. Level 2 | Pag. Level 3 | Interaction Time | User Space 1 | User Space 2 | User Space 3 | Content Space 1 | Content Space 2 | Content Space 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2007 | 1 | 1 | 10 | 12 | 175 | 1 | 2 | 1 | 1 | Africa | Angola | Luanda | Africa | Angola | Luanda |
| 2007 | 1 | 1 | 15 | 10 | 176 | 1 | 2 | 3 | 2 | Europe | England | London | Europe | England | London |
| 2007 | 1 | 2 | 16 | 0 | 174 | 2 | 0 | 0 | 1 | Europe | Portugal | Lisbon | Europe | Portugal | Lisbon |
| 2007 | 3 | 10 | 11 | 5 | 176 | 2 | 3 | 0 | 1 | Europe | England | London | | | |
| 2007 | 3 | 10 | 16 | 50 | 174 | 2 | 3 | 1 | 3 | Europe | Portugal | Lisbon | Europe | Portugal | Lisbon |
| 2007 | 2 | 15 | 20 | 41 | 175 | 2 | 3 | 1 | 2 | Africa | Angola | Luanda | | | |
| 2007 | 3 | 10 | 12 | 15 | 176 | 2 | 3 | 1 | 2 | Europe | Portugal | Lisbon | Europe | England | London |
| 2007 | 4 | 5 | 13 | 10 | 175 | 2 | 3 | 3 | 3 | Europe | Portugal | Porto | | | |
| 2007 | 4 | 10 | 12 | 0 | 176 | 2 | 3 | 3 | 1 | Europe | Portugal | Lisbon | | | |
| 2007 | 3 | 10 | 17 | 15 | 174 | 2 | 3 | 4 | 2 | Europe | Portugal | Lisbon | Europe | Portugal | Lisbon |
| 2007 | 3 | 10 | 17 | 20 | 174 | 2 | 3 | 5 | 3 | Europe | Portugal | Lisbon | | | |
| 2007 | 4 | 5 | 13 | 12 | 175 | 3 | 3 | 2 | 1 | Europe | England | London | Europe | England | London |

Figure 4

41. Figure 5 of the '980 patent, described in the passage above, shows:

| Pag. Level 1 | Pag. Level 2 | Pag. Level 3 | Probability | average interaction time | Weight |
|---|---|---|---|---|---|
| 2 | 3 | 0 | 10% | 1 | 10% |
| 2 | 3 | 1 | 30% | 2.33 | 70% |
| 3 | 3 | 2 | 1% | 1 | 1% |
| 2 | 3 | 3 | 20% | 2 | 40% |
| 2 | 3 | 4 | 10% | 2 | 20% |
| 2 | 3 | 5 | 10% | 3 | 30% |

Figure 5

42. This combination of functional components and limitations set forth in the asserted claims constitute patent-eligible subject matter, are not directed to an abstract idea, law of nature, or natural phenomenon, and contain one or more technical, inventive concepts for accomplishing the goal of quickly and efficiently providing common information to users without unnecessary delay, and providing suggested additional information based on a user's profile.

43. The combination of functional components and limitations set forth in the asserted claims of the '980 patent was not well-understood, routine, or conventional at the time of the invention.

## COUNT I – INFRINGEMENT OF THE '818 PATENT

44. Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

45. Defendants have been and are now making, using, selling, offering for sale, and/or importing products that incorporate one or more of the inventions claimed in the '818 patent.

46. For example, Defendants infringe at least claim 1 of the '818 patent, either literally or under the doctrine of equivalents, in connection with Defendants' Xfinity Cable TV Encoding, as detailed in the preliminary claim chart attached hereto as Exhibit D and incorporated herein by reference.

47. Defendants' infringing activities are and have been without authority or license under the '818 patent.

48. Plaintiff has been, and continues to be, damaged by Defendants' infringement of the '818 patent, and Plaintiff is entitled to recover damages for Defendants' infringement, which damages cannot be less than a reasonable royalty.

## COUNT II – INFRINGEMENT OF THE '568 PATENT

49. Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

50. Defendants have been and are now making, using, selling, offering for sale, and/or importing products that incorporate one or more of the inventions claimed in the '568 patent.

51. For example, Defendants infringe at least claim 1 of the '568 patent, either literally or under the doctrine of equivalents, in connection with Defendants' Xfinity Streaming

Apps, as detailed in the preliminary claim chart attached hereto as Exhibit E and incorporated herein by reference.

52. Defendants' infringing activities are and have been without authority or license under the '568 patent.

53. Plaintiff has been damaged by Defendants' infringement of the '568 patent, and Plaintiff is entitled to recover damages for Defendants' infringement, which damages cannot be less than a reasonable royalty.

## COUNT III – INFRINGEMENT OF THE '980 PATENT

54. Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

55. Defendants have been and are now making, using, selling, offering for sale, and/or importing products that incorporate one or more of the inventions claimed in the '980 patent.

56. For example, Defendants infringe at least claim 1 of the '980 patent, either literally or under the doctrine of equivalents, in connection with Defendants' Xfinity TV Guide with "For You," as detailed in the preliminary claim chart attached hereto as Exhibit F and incorporated herein by reference.

57. Defendants' infringing activities are and have been without authority or license under the '980 patent.

58. Plaintiff has been damaged by Defendants' infringement of the '980 patent, and Plaintiff is entitled to recover damages for Defendants' infringement, which damages cannot be less than a reasonable royalty.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court find in its favor and against Defendants, and that the Court grant Plaintiff the following relief:

A. Entry of judgment that Defendants have infringed one or more claims of the '818 patent,

B. Entry of judgment that Defendants have infringed one or more claims of the '568 patent,

C. Entry of judgment that Defendants have infringed one or more claims of the '980 patent,

D. Damages in an amount to be determined at trial for Defendants' infringement, which amount cannot be less than a reasonable royalty,

E. Pre-judgment and post-judgment interest on the damages assessed, and

F. Such other and further relief, both at law and in equity, to which Plaintiff may be entitled and which the Court deems just and proper.

This 22nd day of December, 2021.

/s/*Cortney S. Alexander*
Cortney S. Alexander
  cortneyalexander@kentrisley.com
  Tel: (404) 855-3867
  Fax: (770) 462-3299
KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Attorneys for Plaintiff
DigiMedia Tech, LLC